1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID GARCIA,

            Plaintiff,

      v.

JOSEPH LEHMAN,

           Defendant,

Case No.  C04-5893FDB

REPORT AND
RECOMMENDATION

**NOTED FOR**:
**March 17th, 2006**

     This 42 U.S.C. § 1983 civil rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  Before the court is defendant's motion for summary judgment.  (Dkt. # 15).  Defendants argue there is no liberty interest in release to community custody for a person under a sentence structure like plaintiff's and that the defendants enjoy qualified immunity from damages at the very least.  (Dkt. # 34).

     At issue is whether it was clearly established under the Due Process Clause of the 14th Amendment that inmates are entitled to due process before a release plan is denied when the inmate is held beyond their earned early release date and the inmate is subject to community custody or community placement.  Plaintiff has not responded

## FACTS

     Washington state has implemented an extremely complex sentencing system.  Under this system some

inmates may earn time off their sentence by programing and good behavior while incarcerated.  Other inmates, like Mr. Garcia, may not earn time off their sentences but instead may become eligible for placement in the community under supervision in lieu of earning good time or earned time.

Plaintiff has not responded to the motion for summary judgment.  Under Local Rule 7 his failure to respond may be deemed as an admission that the motion for summary judgment has merit.  As defendants facts are not contested the court adopts the facts as set forth in defendant's motion for summary judgment.  (Dkt. # 15).

Plaintiff plead guilty to communication with a minor for an immoral purpose and on February 18th, 2004.  The court sentenced him to serve one year and one day in custody with a term of between 36 to 48 months of community custody following his prison term.  (Dkt # 15, page 2).  Thus, at the time he was sentenced he was given a term of community placement which was to be served at the end of his sentence in lieu of good time or earned time.  (Dkt. # 34, Exhibit 2, Attachment A). RCW 9.94A.728 (2) provides:

> No person serving a sentence imposed pursuant to this chapter and committed to the custody of the department shall leave the confines of the correctional facility or be released prior to the expiration of the sentence except as follows:
> ...
>
> (2)(a) A person convicted of a sex offense or an offense categorized as a serious violent offense, assault in the second degree, vehicular homicide, vehicular assault, assault of a child in the second degree, any crime against persons where it is determined in accordance with RCW 9.94A.602 that the offender or an accomplice was armed with a deadly weapon at the time of commission, or any felony offense under chapter 69.50 or 69.52 RCW, committed before July 1, 2000, may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;
>
> (b) A person convicted of a sex offense, a violent offense, any crime against persons under RCW 9.94A.411(2), or a felony offense under chapter 69.50 or 69.52 RCW, committed on or after July 1, 2000, may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;
>
> (c) The department shall, as a part of its program for release to the community in lieu of earned release, require the offender to propose a release plan that includes an approved residence and living arrangement. All offenders with community placement or community custody terms eligible for release to community custody status in lieu of earned release shall provide an approved residence and living arrangement prior to release to the community;
>
> (d) The department may deny transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section if the department determines an offender's release plan, including proposed residence location and living arrangements, may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim safety or community safety. The department's authority under this section is independent of any

court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement;
....

Plaintiff had a possible release date of July 20th, 2004.  His maximum custody term of confinement ended on November 18th, 2004.  (Dkt. # 15, page 2).  On November 17th, 2004 a King County Superior Court Judge signed an order of probable cause that plaintiff was a sexually violent predator.  (Dkt. # 15, page 2).  When plaintiff was released on November 18th, 2004 he was arrested by King County Deputy Sheriffs for the civil commitment proceedings.

Plaintiff submitted two plans for release to community custody.  Both plans were denied as they placed the plaintiff in close proximity to minor females.  (Dkt. # 15, pages 4 and 5).

DISCUSSION

A.      The standard of review.

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  See also Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W. Elec. Service Inc.,

809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. Id.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim.  T.W. Elec. Service Inc., 809 F.2d at 630(relying on Anderson, supra).  Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed."   Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

B.     The doctrine of qualified immunity.

Plaintiff's counsel have raised the affirmative defense of qualified immunity.  (Dkt. # 15, page16).  Government officials are given qualified immunity from civil liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In analyzing a qualified immunity defense, the court must determine:  (1) what right has been violated;  (2) whether that right was so "clearly established" at the time of the incident that a reasonable officer would have been aware of its constitutionality;  and (3) whether a reasonable public officer could have believed that the alleged conduct was lawful.  See  Gabbert v. Conn, 131 F.3d 793, 799 (9th Cir.1997), overruled on other grounds, Conn v. Gabbert, 526 U.S. 286 (1999);  Newell v. Sauser, 79 F.3d 115, 117 (9th Cir.1996).  The doctrine allows for mistakes in judgement and a government official will not be held liable unless the unlawfulness of the action should have been apparent.  Act Up!/Portland v. Bagley, 988 F.2d. 868 (9th Cir. 1993).

C.     Analysis.

The court begins by noting that an inmate has no constitutional right to release before expiration of his or her sentence.  Greenholtz v. Inmates of Nebraska, 442 U.S. 1 (1979).  Nor have the Washington State appellate courts recognized an independent state created interest in amassing early release credits.  In Re Galvez, 79 Wn. App 655 (1995).  This does not, however, end the court's analysis.  Under the facts of this case, plaintiff had the possibility of release to a less restrictive setting subject to approval by the Department of Corrections of a release plan.

The court is aware that the interest at issue in this case must be a state created liberty interest and is

1    not an interest found under the 14th Amendment Due Process Clause itself.  Usually the court would first

2    be required to determine whether there is in fact a state created liberty interest.  The Washington State

3    Court of Appeals, Division 1, found there to be a "limited  liberty interest" in earned early release credit

4    which requires minimal due process.  In re Crowder, 97 Wn. App. 598 (1999).  No hearing of any type was

5    mandated by Crowder.  Indeed, the court found that Crowder was afforded due process based on the

6    attempts to find suitable community placement, even though his placement occurred 101 days after his

7    earned early release date for community custody.  Crowder, supra at p. 599.

8        In Dutcher the same appellate court emphasized it was proceeding under RAP 16.4, which did not

9    require a finding of a constitutional violation but rather only a finding of unlawful restraint under state law.

10   Dutcher, supra at p. 758 (fn. 3 and 4, *citing* In re Cashaw, 123 Wn. 2d 138 (1994)).

11       The plaintiff in Cashaw filed a personal restraint petition (PRP) which challenged the actions of the

12   Indeterminate Sentence Review Board in setting his minimum prison term to coincide with the remainder

13   of his court-imposed maximum sentence.  The Court of Appeals granted the "PRP after concluding the

14   Board's failure to follow its own procedural rules violated Cashaw's due process rights." Cashaw, supra,

15   at p. 140.  While the Supreme Court affirmed the grant of the PRP, it did so on the ground that "an inmate

16   may be entitled to relief solely upon showing the Board set a minimum term in violation of a statute or

17   regulation."  Cashaw at p. 140.  The Supreme Court disagreed, however, with the Court of Appeals and

18   found "that no due process liberty interest was created here, for the Board's regulations imposed only

19   procedural, not substantive, requirements."  Cashaw at p. 140.  The Supreme Court affirmed the notion

20   that "procedural laws do not create liberty interests; only substantive laws can create these interests."

21   Cashaw, supra at p. 145.  Relief was granted In Cashaw by Washington State Supreme Court under RAP

22   16.4 on the basis that the Indeterminate Sentence Review Board failed to follow its own regulations.

23       As noted above, the Washington State Supreme Court in Cashaw was careful to grant relief only on

24   state grounds.  Indeed, the State Supreme Court in Cashaw analyzed what is needed to find a state created

25   liberty interest and found no due process violation in that case.  The court stated:

26          Liberty interests may arise from either of two sources, the due process clause and
           state laws. Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675
27         (1983); Toussaint v. McCarthy, 801 F.2d 1080, 1089 (9th Cir.1986), cert. denied, 481 U.S.
           1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). The due process clause of the federal
28         constitution does not, of its own force, create a liberty interest under the facts of this case
           for it is well settled that an inmate does not have a liberty interest in being released prior to

serving the full maximum sentence. <u>Greenholtz v. Inmates of Nebraska Penal &</u>
<u>Correctional Complex</u>, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979); <u>Ayers</u>,
105 Wash.2d at 164-66, 713 P.2d 88; <u>Powell</u>, 117 Wash.2d at 202-03, 814 P.2d 635.

However, as indicated above, state statutes or regulations can create due process
liberty interests where none would have otherwise existed. <u>See</u> <u>Hewitt</u>, 459 U.S. at 469,
103 S.Ct. at 870; <u>Toussaint</u>, 801 F.2d at 1089; <u>Powell</u>, 117 Wash.2d at 202-03, 814 P.2d
635. By enacting a law that places substantive limits on official decisionmaking, the State
can create an expectation that the law will be followed, and this expectation can rise to the
level of a protected liberty interest. <u>See</u> <u>Toussaint</u>, 801 F.2d at 1094.

For a state law to create a liberty interest, it must contain "substantive predicates" to
the exercise of discretion and "**specific directives to the decisionmaker that if the**
**regulations' substantive predicates are present, a particular outcome must follow**".
<u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910,
104 L.Ed.2d 506 (1989); <u>Swenson v. Trickey</u>, 995 F.2d 132, 134 (8th Cir.), <u>cert. denied</u>,
510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 468 (1993). **Thus, laws that dictate particular**
**decisions given particular facts can create liberty interests, but laws granting a**
**significant degree of discretion cannot.**

<u>In Re Cashaw</u>, 123 Wn 2d at 144 (emphasis added).

The Department of Corrections has been mandated by statute to implement a system that allows for the possibility of early release. This does not equate to a liberty interest in release. Here plaintiff submitted two plans and the plans were rejected. RCW 9.94A.728(2)(d) grants the Department the ability and the discretion to deny a release plan for any person who would receive community custody if the Department determines the plan may violate conditions of a sentence or supervision, may place the offender at risk to re-offend, or presents a risk to victim or community safety. Thus, whatever limits have been placed on the Department are not outcome determinative and under the analysis used in <u>Cashaw</u> there would be no state created liberty interest. By way of example, the discretion of the Department has not been limited when the Department considers how close to a school or day care an offender may reside. The Department still has a significant degree of discretion in granting or denying release to community placement or community custody. The statute itself states "The department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement." RCW 9.94A.728 (2)(d).

In 1995 the United States Supreme Court examined the methodology used to determine if state laws or regulations created liberty interests in a prison context and the Court adopted a new approach. <u>Sandin v. Conners</u>, 515 U.S. 472 (1995). As plaintiff notes, the Court stated "[t]hese interests will be generally limited to freedom from restraint which impose atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life." (Dkt. # 36, page 7). The decision in <u>Sandin</u> was a reaction to the practice of combing state regulations for mandatory language to find liberty interests.

It is settled that an inmate has no constitutional right to release before expiration of the court imposed sentence. <u>Greenholtz v. Inmates of Nebraska</u>, 442 U.S. 1 (1979). Therefore, the refusal to investigate a proposed plan does not lead to violation of a constitutionally protected right. There is no change in the incidents of normal prison life and the inmate is held until the expiration of his sentence. When the court considers that at the time of sentencing plaintiff was not allowed the possibility of having any unconditional release, this result is not overly harsh. An inmate has no constitutional right to parole or to any type of automatic release to community custody. Defendant Lehman is entitled to qualified immunity. Accordingly, the defendants' motion for summary judgment should be **GRANTED**.

<u>CONCLUSION</u>

For the reasons stated above the court should **GRANT** defendant's motion for Summary Judgment. A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **March 17th, 2006**, as noted in the caption.

DATED this 17th day of February, 2006.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 7